UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| PAIGE MARCEAUX, individually and as the natural tutrix of S. STELLEY,<br><br>Plaintiff,<br><br>v.<br><br>ABBOTT LABORATORIES, INC. and LARRY'S SUPER FOODS, INC.<br><br>Defendants. | Case No.<br><br>Judge: |

**NOTICE OF REMOVAL**

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendant Abbott Laboratories Inc. ("Abbott") hereby removes this action from Louisiana's 15th Judicial District Court in Vermilion Parish, where it is pending as Civil Case No. C-111031, to the United States District Court for the Western District of Louisiana.

This case is one of more than three dozen lawsuits pending across the country regarding powdered infant formula allegedly produced at Abbott's manufacturing facility in Sturgis, Michigan, which was the subject of a voluntary recall earlier this year.  Unlike the vast majority of those cases, however, this case was initiated in state court, naming as a defendant not only Abbott (the manufacturer of the formula that allegedly caused Plaintiff's child's injuries), but also the local store (Larry's Super Foods) at which Plaintiff alleges she purchased the formula. While Plaintiff's claims here lack merit across the board—in particular because she alleges her child contracted a bacteria (Salmonella) that FDA and CDC have investigated and found unrelated to Abbott's manufacturing facility—for purposes of this notice, her lawsuit belongs in federal court where it should be consolidated into the recently-created MDL centralizing similar

cases from more than a dozen federal judicial districts. *See* Aug. 5, 2022 Transfer Order, ECF 58, MDL No. 3037 (J.P.M.L.).

As set forth more fully below, removal of this action to this Court is proper because: (1) there is complete diversity of citizenship between Plaintiff and the removing Defendant, Abbott, and the citizenship of the other Defendant, Larry's, should be disregarded because Larry's was improperly joined under settled Fifth Circuit law; (2) the amount in controversy exceeds $75,000, exclusive of interest and costs; and (3) this Court is the federal district and division embracing the place where the state-court litigation is pending.

## PROCEDURAL REQUIREMENTS FOR REMOVAL

1. On June 29, 2022, Plaintiff Paige Marceaux, individually and on behalf of S.S., her minor child, filed this lawsuit in the 15th Judicial District Court of Vermilion Parish in the State of Louisiana. *See generally* June 29, 2022 Pet. (Ex. 1).

2. Plaintiff served Abbott with the Summons and Complaint on July 11, 2022. *See id.* Pursuant to 28 U.S.C. § 1446(b)(1), this notice is timely filed.

3. As 28 U.S.C. § 1446(a) requires, Abbott has attached to this Notice of Removal "a copy of all process, pleadings, and other orders served upon" it. *See* Pet. Abbott has also attached the state court docket showing all docket entries. *See* Ex. 2.

4. Abbott consents to removal in accordance with 28 U.S.C. § 1446(b)(2)(A). Consent is not required from Defendant Larry's, as Larry's was improperly joined for the reasons set forth below. *See Jernigan v. Ashland Oil, Inc.*, 989 F.2d 812, 815 (5th Cir. 1993) ("[C]onsent need not be obtained from a co-defendant that the removing party contends is improperly joined.") (citation omitted)); *also Valence v. Jefferson Par. Hosp. Serv. No. 2*, 2008 WL 1930524, at *1 (E.D. La. May 1, 2008) (same). Nonetheless, Abbott understands that Larry's consents to removal.

5. Upon filing this Notice of Removal, Abbott will provide written notice to Plaintiff and will file a Notification of Removal (attaching a copy of this Notice) with the state court, as 28 U.S.C. § 1446(d) requires.

6. This case is properly before this Court because the 15th Judicial District Court for Vermilion Parish, Louisiana is located within the Western District of Louisiana. *See* 28 U.S.C. § 98(c). Venue is therefore proper because this Court is the "district and division within which such action is pending." 28 U.S.C. § 1446(a); *see generally* Pet. (filing state-court case in Vermilion Parish, Louisiana). Additionally, Plaintiff alleges that she is a citizen and resident of Vermilion Parish. *See* Pet. ¶ 4.

## DIVERSITY JURISDICTION

**I. THIS COURT HAS SUBJECT MATTER JURISDICTION.**

7. This Court has subject matter jurisdiction under 28 U.S.C. § 1332. There is complete diversity of citizenship between Plaintiff and the removing defendant, Abbott, and the amount in controversy exceeds $75,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a).

**A. There is Complete Diversity.**

8. Plaintiff Paige Marceaux asserts claims individually and on behalf of S.S, her minor child. Pet. ¶¶ 4-5. Both Plaintiff and her child are citizens and residents of Louisiana. *Id.*

9. Defendant Abbott Laboratories Inc. is incorporated in Delaware and has its principal place of business in Abbott Park, Illinois; consequently, Abbott was a citizen of Delaware and Illinois at the time the Petition was filed (and remains so today). 28 U.S.C. § 1332(c)(1); *see also* Pet. ¶ 6 (alleging Illinois and Delaware citizenship).

10. The Petition also names Larry's Super Foods, Inc. as a defendant. *Id.* ¶ 7. As discussed below, however, Larry's is improperly joined. That means that even though Larry's is

3

allegedly a citizen of Louisiana, its citizenship should be disregarded for purposes of diversity under 28 U.S.C. § 1332.  *See infra* § II.

11. There is complete diversity between Plaintiff and Abbott, the only properly joined defendant.

### B. The Amount in Controversy Exceeds $75,000.

12. Subject-matter jurisdiction based on diversity of citizenship requires that the amount in controversy "exceed[] the sum or value of $75,000, exclusive of interest and costs."  28 U.S.C. § 1332(a).

13. Where, as here, the petition does not state a specific amount in controversy, "the notice of removal may assert the amount in controversy."  28 U.S.C. § 1446(c)(2).  Though Louisiana law generally prohibits plaintiffs from alleging a specific monetary amount of damages in the petition, "if a specific amount of damages is necessary to establish … the lack of jurisdiction of federal courts due to insufficiency of damages[] … a general allegation that the claim … is less than the requisite amount is required."  La. Code Civ. Proc. art. 893(A); *see also Sonnier v. Republic Fire & Cas. Ins. Co.*, 2006 WL 3924238, at *1 (W.D. La. Nov. 22, 2006).  Failing to allege that damages are less than the jurisdictional minimum in the state-court petition "creates a 'strong presumption' in favor of [federal] jurisdiction."  *Sonnier*, 2006 WL 3924238, at *1 (citation omitted); *see also Raggio, Cappel, Chozen & Berniard v. Hartford Steam Boiler Inspection & Ins. Co.*, 2006 WL 4059093, at *1 (W.D. La. Dec. 29, 2006) (concluding that the amount in controversy exceeded $75,000 because plaintiff failed to allege a lesser monetary amount in state court and, "in effect, conceded in its state court pleadings that the requisite jurisdictional amount is in controversy" (citation omitted)); *Maxwell v. Lesnick*, 2016 WL 4070239, at *2 (W.D. La. June 23, 2016) (similar), *report & recommendation adopted*, 2016 WL 4059549 (W.D. La. July 28, 2016).

14. For jurisdiction to attach, the removal notice "need include only a *plausible allegation* that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014) (emphasis added). The removing party may also ask the court to make "common-sense inferences about the amount put at stake by the injuries the plaintiffs claim." *Robertson v. Exxon Mobil Corp.*, 814 F.3d 236, 240 (5th Cir. 2015).

15. Here, it is "facially apparent from the plaintiffs' pleadings alone" that the amount in controversy exceeds $75,000. *Id.* at 240 (citation omitted). While Abbott has not had the opportunity to evaluate Plaintiff's claimed injuries, assuming her allegations accurately state her position at this stage of the litigation, Plaintiff alleges significant personal injuries, including harm that required a hospital stay, and injuries that will allegedly "worsen" in the future. *See* Pet. ¶¶ 14-18. Specifically, Plaintiff alleges that her child became "violently ill," including a "high fever, vomiting, and diarrhea" for multiple days that required a trip to the emergency room and admission to the hospital, where he was "diagnosed with Salmonella gastroenteritis and treated with antibiotics and IV-fluids." *Id.* ¶¶ 1, 14, 15. Plaintiff goes on to assert that her son will continue to suffer medical complications for years, requiring medical intervention including a transplant or surgery. *Id.* ¶¶ 16-18.

16. Altogether, Plaintiff seeks damages for "past, present, and future pain and suffering," "past medical bills," and "future medical needs," *id.* ¶ 38. While Abbott denies that any of the injuries Plaintiff identifies were caused by its infant formula, her allegations (taken as true for present purposes) demonstrate that the amount in controversy exceeds the jurisdictional minimum, especially when viewed under the "strong presumption" that applies in these circumstances. *Sonnier*, 2006 WL 3924238, at *1.

## II.     LARRY'S WAS IMPROPERLY JOINED.

17.     "Ordinarily, diversity jurisdiction requires complete diversity—if any plaintiff is a citizen of the same State as any defendant, then diversity jurisdiction does not exist." *Flagg v. Stryker Corp.*, 819 F.3d 132, 136 (5th Cir. 2016) (en banc).  But there is an important exception to this default rule: If a "plaintiff improperly joins a non-diverse defendant, then the court may disregard the citizenship of that defendant, dismiss the non-diverse defendant from the case, and exercise subject matter jurisdiction over the remaining diverse defendant." *Id.*

18.     To show that a non-diverse party has been "improperly joined," a removing defendant must "demonstrate[] that there is no possibility of recovery by the plaintiff against an in-state defendant." *Id.* (quoting *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc)).  In other words, if there is "no reasonable basis for the district court to predict that the plaintiff might be able to recover against [a nondiverse] defendant," the non-diverse defendant was improperly joined and removal is appropriate. *Int'l Energy Ventures Mgmt., LLC v. United Energy Grp., Ltd.*, 818 F.3d 193, 200 (5th Cir. 2016) (alteration in original) (quoting *Smallwood*, 385 F.3d at 573).

19.     To undertake the improper-joinder inquiry, courts typically "conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant." *Id.* (quoting *Smallwood*, 385 F.3d at 573).  When, however, a "plaintiff's complaint has 'misstated or omitted discrete facts that would determine the propriety of joinder,' the court may instead 'pierce the pleadings and conduct a summary inquiry.'" *Flagg*, 819 F.3d at 136 (quoting *Smallwood*, 385 F.3d at 573).  Such an inquiry "is appropriate only to identify the presence of discrete and undisputed facts that would preclude [the] plaintiff's recovery against the in-state defendant." *Id.* at 136-37 (alteration in original) (quoting *Smallwood*, 385 F.3d at 573-74).

20. Here, there is no need to pierce the pleadings because Plaintiff's allegations fail as a matter of law. Plaintiff asserts three claims against Larry's based on its intermediate sale of Abbott's allegedly contaminated formula: (1) a redhibition claim, Pet. ¶¶ 19-26, (2) a claim for breach of warranty of fitness for ordinary use, *id.* ¶¶ 27-39, and (3) a claim that the formula was unreasonably dangerous in composition, in violation of the Louisiana Products Liability Act, *id.* ¶¶ 40-45. Plaintiff cannot possibly recover against Larry's for any of these claims.

A. **Plaintiff Fails to State a Redhibition Claim Against Larry's.**

21. Plaintiff cannot succeed on her redhibition claim against Larry's (Count 1). Redhibitory defects either "render[] the thing useless" or render "its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect." La. Civ. Code Art. 2520. If a product has a redhibitory defect, recovery is limited to rescission of the sale, and a good-faith seller "is only bound to repair, remedy, or correct the defect." *Id.* Art. 2531. For that reason, where the seller did not know of the defect, "tender is a prerequisite to the maintenance of any action in redhibition." *Gen. Motors Acceptance Corp. v. Sims*, 472 So. 2d 111, 114 (La. Ct. App. 1985) (citation omitted). Before filing suit, therefore, "[t]he buyer bringing an action in redhibition is obligated to tender the object which he alleges to be defective or give a reasonable excuse for his failure to do so." *Wilson v. GEICO Cas. Co.*, 2022 WL 2335244, at *4 (La. Ct. App. June 29, 2022) (citations omitted).

22. Plaintiff's redhibition claim against Larry's ignores these requirements. To start, Plaintiff cites only Article 2520 of the Louisiana Civil Code in her Petition but, because she never alleges that Larry's actually knew of any alleged defect in the product, Larry's is a good-faith seller and Article 2531 also applies. Nevertheless, even if Plaintiff had identified the appropriate code provisions, she cannot recover in redhibition because she does not allege that she tendered the product to Larry's. Plaintiff alleges that she purchased the formula, Pet. ¶ 11, and that she is

"entitled to a return of the purchase price," *id.* ¶ 26, but she never claims that she gave Larry's any "opportunity to repair the defect," *Leblanc v. Wyeth, Inc.*, 495 F. Supp. 2d 609, 615 (W.D. La. 2007) (citation omitted).  That omission bars her claim.

23.  Nor does Plaintiff explain her pleading failure.  To be sure, a plaintiff has a "reasonable time" to tender the product after the discovery of a defect, *Lindy Invs., III, L.P. v. Shakertown Corp.*, 631 F. Supp. 2d 815, 820 (E.D. La. 2008), *aff'd*, 360 F. App'x 510 (5th Cir. 2010), and tender is not required "where the thing has perished through the badness of its quality," *Edmundson Bros. v. F.M. Carriere & Son, Inc.*, 552 So. 2d 1229, 1232 (La. Ct. App. 1989).  But Plaintiff does not claim she delayed any return, nor does she allege she was unable to do so—she simply fails to address tender at all.  *See* Pet. ¶¶ 14-18.

24.  Faced with similar claims, courts agree that defendants like Larry's are improperly joined.  For example, in *King v. Bayer Corp.*, 2002 WL 35645177 (W.D. Wash. Oct. 25, 2002), plaintiff purchased Alka-Seltzer from a Rite Aid in Louisiana, suffered a heart attack, and sued the out-of-state manufacturer and home-state seller in Louisiana state court.  *Id.* at *1 (applying Louisiana law).  The defendants removed to the Western District of Louisiana on the grounds that the plaintiff could not recover in redhibition and had improperly joined the home-state seller; the plaintiff moved to remand, and the case was transferred to a pending multidistrict litigation in the Western District of Washington.  *Id.*  The Western District of Washington subsequently denied the motion to remand on the basis that—as here—the complaint did not cite the proper provision of the Louisiana Civil Code, "d[id] not allege that plaintiff sought rescission of the sale," and did not provide any other notice of the alleged defect.  *Id.* at *2.  The plaintiff therefore had "no reasonable possibility of holding [defendant] liable."  *Id.* *3.  Plaintiff's redhibition claim against Larry's fails for the same reason.

**B.     Plaintiff's Breach of Warranty of Fitness for Ordinary Use Claim Sounds Only in Redhibition.**

25.     Nor can Plaintiff prevail on her claim for breach of warranty for ordinary use (Count 2).  Under Louisiana law, plaintiffs can recover for breach of ordinary use only if the product is free from redhibitory defects and, here, plaintiff alleges a (failed) redhibition claim.  Her claims therefore sound only in redhibition.  Article 2524 of the Louisiana Civil Code provides: "[t]he thing sold must be reasonably fit for its ordinary use."  And Comment (b) to Article 2524 clearly distinguishes fitness for ordinary use from redhibitory defects, stating: "when the thing sold is not fit for its ordinary use, *even though it is free from redhibitory defects*, the buyer may seek dissolution of the sale and damages, or just damages, under the general rules of conventional obligations."  La. Civ. Code Ann. art. 2524 cmt. (b) (emphasis added).  In such cases, "[t]he buyer's action in such a case is one for breach of contract and not the action arising from the warranty against redhibitory defects."  *Id.*  In other words, a plaintiff can recover for breach of ordinary use in Louisiana, but *only* if the product is free from redhibitory defects.

26.     Applying this plain-text reading of the statute, courts have held that where a plaintiff's allegations sound in redhibition, a plaintiff may not separately recover for breach of warranty of fitness for ordinary use.  *See, e.g.*, *Chesapeake La., L.P. v. Innovative Wellsite Sys., Inc.*, 2014 WL 5796794, at *5 (W.D. La. Nov. 6, 2014) ("It is clear from Plaintiffs' opposition that they believe the tubing assembly had redhibitory defects ... Thus, Plaintiffs' claims under Article 2524 are subsumed by their claims under Article 2520 for breach of the warranty against redhibitory defects."); *Stroderd v. Yamaha Motor Corp., U.S.A.*, 2005 WL 2037419, at *3 (E.D. La. Aug. 4, 2005) ("[A] breach of contract of fitness for ordinary use claim is only an independent cause of action when an item is free from redhibitory defects.").  In fact, as the Fifth Circuit has observed, it is "fundamental Louisiana law" that "actions based on a breach of warranty against

9

defects are to be brought in redhibition instead of as a breach of contract." *PPG Indus. v. Industry Laminates Corp.*, 664 F.2d 1332, 1335 (5th Cir. 1982) (concluding that a plaintiff's claim was subject to the lengthier statute of limitations applicable to breach-of-warranty claims rather than the shorter period applicable to redhibition claims).

27. Plaintiff's allegations sound in redhibition, not breach of warranty of fitness for ordinary use. In *Janke v. Babcock Co.*, 2012 WL 1499292 (E.D. La. Apr. 27, 2012), for instance, a plaintiff filed suit in state court after being injured when a wooden stepladder broke, suing both the in-state seller and the out-of-state manufacturer. *Id.* at *1. The manufacturer removed, claiming that the plaintiff had improperly joined the seller. *Id.* Although the plaintiff had brought claims under Article 2520 (redhibition) and Article 2524 (breach of warranty of fitness for ordinary use), the court rejected the plaintiff's warranty claim, emphasizing: "The complaint does not allege a breach of contract claim, but one in redhibition concerning an alleged 'hidden defect.' Therefore, the invocation of article 2524 does not show that the plaintiffs have a possibility of recovery." *Id.* at *5. Accordingly, the Court held the in-state seller "was improperly joined," that its "citizenship is disregarded for purposes of determining jurisdiction," and "the case was properly removed" by the out-of-state manufacturer. *Id.*

28. So too here. Plaintiff claims "[t]he Formula was not reasonably fit for feeding young children," but only, she alleges, "because it was contaminated with Salmonella"—a redhibitory defect. Pet. ¶ 35. Indeed, Plaintiff's *own allegations* concede that the alleged "Salmonella in the Formula" qualifies as "a defect." *See id.* ¶ 23. And that means that her so-called warranty claim is actually just one for redhibitory defect, *not* breach of contract. That type of claim is only available "when the thing sold is not fit for its ordinary use" despite being "free from redhibitory defects." La. Civ. Code Ann. art. 2524 cmt. (b). Because Plaintiff's "warranty

of fitness for ordinary use" claim is nothing more than an attempt to repackage her failed redhibition claim, there is no chance of recovering against Larry's on this claim, either.

      **C.**      **Plaintiff Cannot Bring a Claim Against a Seller Under the Louisiana Products Liability Act.**

29. Finally, there is no possibility that Plaintiff's Count 3 against Larry's can succeed for a simple reason—Larry's is not a manufacturer. Under the Louisiana Products Liability Act ("LPLA"), "[t]he *manufacturer*," not the seller, "of a product shall be liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by the claimant or another person or entity." La. Stat. § 9:2800.54(A) (emphasis added). This statutory reading makes sense: "A product is unreasonably dangerous if" it "is unreasonably dangerous in construction or composition," *id.* § 9:2800.54(B)(1), meaning "the product deviated in a material way from the *manufacturer's* specifications or performance standards for the product or from otherwise identical products *manufactured* by the same *manufacturer*." *Id.* § 9:2800.55 (emphases added).

30. For this reason, the "[t]he threshold test of liability under the LPLA is whether the defendant is a 'manufacturer.'" *Loper v. Nat'l Union Fire Ins. Co.*, 2001 WL 210367, at *2 (E.D. La. Mar. 2, 2001). The LPLA defines "[m]anufacturer" to mean "a person or entity who is in the business of manufacturing a product for placement into trade or commerce," or a "seller" in only two limited circumstances. La. Stat. § 9:2800.53(1). First, "[a] seller of a product *who exercises control over or influences a characteristic of the design, construction or quality* of the product that causes damage" is a "[m]anufacturer." *Id.* § 9:2800:53(1)(b) (emphasis added). And second, "[a] seller of a product of an alien manufacturer" (*i.e.*, a manufacturer "outside the United States") qualifies as a manufacturer "if the seller is in the business of importing or distributing the product

11

for resale and the seller is the alter ego of the alien manufacturer." *Id.* § 9:2800.53(1)(d). All other sellers are not manufacturers. In fact, the LPLA specifically defines a "[s]eller" as "a person or entity *who is not a manufacturer* and who is in the business of conveying title to or possession of a product to another person or entity in exchange for anything of value." *Id.* § 9:2800.53(2) (emphasis added).

31. Because the LPLA does not apply to non-manufacturing sellers, strict liability for unreasonably dangerous products does not attach to such sellers. Rather, those sellers are only subject to standard negligence liability: A non-manufacturer seller of a defective product is only liable for damages in tort "*if it knew or should have known that the product was defective and failed to notify purchasers of the defect.*" *Loper*, 2001 WL 210367, at *4 (emphasis added); *see Alexander v. Toyota Motor Sales, U.S.A.*, 123 So. 3d 712, 716 (La. 2013) (similar); *cf. Whitley v. Premier Nissan, LLC*, 2018 WL 6199916, at *4 (E.D. La. Nov. 28, 2018) (finding that automobile dealer was improperly joined because plaintiff could not prevail on LPLA claim it asserted against the dealer, a non-manufacturer seller).

32. Here, there can be no question that Larry's is a non-manufacturer seller. The Petition expressly states that the formula in question was "*manufactured*" by Abbott and then "*sold* by defendant Larry's Super Foods, Inc." Pet. ¶ 2 (emphases added). Plaintiff never alleges that Larry's "exercise[d] control over or influence[d] a characteristic of the design, construction or quality" of Abbott's infant formula (nor could she), nor does she allege that Abbott (incorporated in Delaware with a principal place of business in Illinois) is an "alien manufacturer." La. Stat. §§ 9:2800.53(1)(b), (d). Count 3, moreover, sounds in strict liability under the LPLA, not traditional negligence. Nowhere in Count 3 does Plaintiff claim that *any party* had "actual or constructive knowledge that the product it sold was defective," much less that *Larry's* did. *See Alexander*, 123 So. 3d at 714. Rather, the Petition simply alleges that that the formula was

defective and that its defect caused injury—a strict liability claim. Because Larry's is a seller, not a manufacturer, Plaintiff's Count 3 as to Larry's fails as a matter of law. *See Ayala v. Enerco Grp., Inc.*, 569 F. App'x 241, 245 (5th Cir. 2014) (holding that home-state retailer was improperly joined because retailer was a "non-manufacturing seller" and therefore plaintiff "c[ould not] allege a viable cause of action … under the LPLA").

\* \* \* \* \*

33. In the end, because there is no possibility that Plaintiff can recover against Larry's on any of its three claims, Larry's was improperly joined to the state-court action. *See Int'l Energy Ventures Mgmt*, 818 F.3d at 200. Removal to this Court is proper on the basis of the diversity between Plaintiff and Abbott.

## CONCLUSION

For the foregoing reasons, Abbott removes this action from the 15th Judicial District Court, Vermilion Parish, State of Louisiana to the United States District Court for the Western District of Louisiana.

Dated:  August 10, 2022

Respectfully submitted,

*/s/ Don S. McKinney*

Don S. McKinney
ADAMS AND REESE LLP
701 Poydras Street, Suite 4500
New Orleans LA 70139
Tel: 504-585-0134
don.mckinney@arlaw.com

James F. Hurst, P.C. (*pro hac vice forthcoming*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Tel: 312-862-2000
Fax: 312-862-2200
james.hurst@kirkland.com

Michael A. Glick (*pro hac vice forthcoming*)
Erin E. Cady (*pro hac vice forthcoming*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., N.W.
Washington, DC 20004
Tel: 202-389-5000
Fax: 202-389-5200
michael.glick@kirkland.com
erin.cady@kirkland.com

*Attorneys for Abbott Laboratories Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on August 10, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which sent notification of this filing to all counsel of record.

Dated:  August 10, 2022                              */s/ Don S. McKinney*
                                                           Don S. McKinney